ILLINOIS CENT. R. Co. *v.* FIRST NAT. BANK OF McCOMB
CITY ET AL.

[70 South. 831.]

SET-OFF AND COUNTERCLAIMS. *Rights of assignee. Statute.*

> Under our anti-commercial statute, Code 1906, section 4001, providing that all notes and other writings for the payment of money or other thing may be assigned by indorsement, and the assignee may maintain such action thereon in his own name as the assignor might have maintained and that in all actions on such writings defendant shall be allowed the benefit of all set-offs had against them previous to notice of assignment, where plaintiff railroad, in course of purchasing lumber under contract which required the seller to pay the freight to points on its line, had paid freight charges for the seller amounting to one thousand eight hundred and ninety-four dollars, and which owed the seller the purchase price of lumber amounting to two thousand nine hundred dollars; in such case the railroad, as against a bank standing in the position of an assignee of the invoices, after the seller's bankruptcy was entitled to set off such freight advances against the invoices since the bank at all times stood in the shoes of the seller.

APPEAL from the chancery court of Pike county.

HON. J. S. HICKS, Chancellor.

Bill by the Illinois Central Railroad Company against the First National Bank of McComb City and others, with answer and cross-bill by the defendant bank. From a decree for defendants, complainant appeals.

The facts are fully stated in the opinion of the court.

*Mayes, Wells, May & Sanders* and *R. V. Fletcher,* for appellant.

*Green & Green* and *Quin & Williams,* for appellee.

SYKES, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Pike county adverse to the appellant company upon the following statement of facts:

During the years 1908, 1909, and 1910, the W. C. Sutherland Lumber Company sold to the appellant railroad company a large number of carloads of lumber. The lumber was inspected by a representative of the appellant company and accepted by him before being loaded at the shipping point. The contract of sale, among other things, provided that the seller, W. C. Sutherland, was to pay the freight on the carloads of lumber to a point on appellant's line. All of the lumber involved in this controversy was purchased at points on connecting lines of the appellant company. The testimony in this case shows that on practically every invoice was printed or written, "Shipper pays all charges to I. C. Railroad Company line." The invoices also show the terms of payment. There is also written or printed on the face of these invoices the following, "Please send voucher to O. B. Quin, cashier First National Bank, McComb, Miss." The invoices were forwarded to the appellant company by appellee bank and were paid by the company issuing the vouchers as follows: "To W. C. Sutherland Lumber Company: Pay First National Bank of McComb City, Miss." The testimony shows that one voucher was often issued in payment of several carloads of lumber. Some of the invoices for the lumber showed on their faces that the amount of freight had been deducted; others were silent on this point. In no instance did the W. C. Sutherland Lumber Company prepay the freight charges. The connecting carrier would charge to the appellant railroad company the amount of freight due on these cars, and monthly settlements were had between the railroad companies, at which time the appellant railroad company settled for all of these freight charges on this lumber. Some time during the year 1910, the W. C. Sutherland Lumber Company failed, at which time it owed the appellant railroad company as freight charges paid on carloads of lumber the sum of about one thousand eight hundred and ninety-four dollars. At this time appellant railroad

company owed the W. C. Sutherland Company for the purchase price of fourteen or fifteen cars of lumber, amounting in round numbers to about two thousand nine hundred dollars. After the failure of the Sutherland Lumber Company, the First National Bank of McComb City notified the appellant railroad company that the bank held by assignment the invoices for these fourteen or fifteen carloads of lumber and demanded payment of same from the appellant railroad company. The appellant offered to pay this amount less the amount of freight charges owed to it by the Sutherland Lumber Company for all of the freight advanced on the lumber shipments during the entire time it had dealt with the W. C. Sutherland Lumber Company. The bank declined to settle on this basis, but offered to settle for the amount of the invoices less any freight charges due on these fourteen or fifteen cars of lumber. Several suits were instituted by the bank on different invoices for carloads of lumber, and other suits were filed against said lumber company by attachment, and still other parties were claiming an interest in the lumber contained in the said last fourteen cars. At this juncture appellant railroad company filed its bill in the chancery court of Pike county, alleging in substance the above facts, and asking that the court settle the equities of all the parties interested. The appellee bank filed an answer and cross-bill, claiming that the appellant railroad company was due it the amount of purchase price for these fourteen cars of lumber less any freight charges paid by the appellant on any of these fourteen cars. The chancellor entered a decree in accordance with the answer and cross-bill of the appellee bank. The facts are not disputed.

It is the contention of the appellee that, by the assignment of the invoices for the last fourteen cars of lumber shipped by the W. C. Sutherland Lumber Company to the appellant railroad company, the bank took the same free from any claims or set-offs for any bal-

ance due the appellant for freight on any previous shipments of lumber. It is the contention of the appellant that under our anti-commercial statute the appellant has the right to set-off against the assigned claim held by the bank this claim for freight paid by it on previous shipments of lumber. There appears nowhere in the record any written assignment of these invoices for lumber by Sutherland to the bank. There is a notation appearing on the face of each invoice, "Please send voucher to O. B. Quin, cashier First National Bank, McComb, Miss." The uncontroverted testimony shows that the railroad company acted upon this request and sent the vouchers to the First National Bank. It further shows, however, that the railroad company had no notice whatever that the bank claimed that any of these invoices had been assigned to it or that the bank made any claim whatever to the proceeds of any of this money, until after the failure of the W. C. Sutherland Lumber 'Company, at which time there was already due the appellant company all of the freight charges it claims as a set-off in this suit, and at which time there was also due either Sutherland or the bank the purchase price for these fourteen cars of lumber by the appellant railroad company. However, whether we treat each one of the transactions as an assignment of the invoices to the bank, or whether we treat it as a sale between appellant and the W. C. Sutherland Lumber Company and that the bank merely acted as the collecting agent, the rights of the parties in each instance are the same.' The appellee bank certainly could not by assignment acquire the right to collect the purchase price on all of these shipments of lumber freed from the right of the railroad company to set off at any time against any or all of these claims whatever sum it had advanced for freight charges. These freight charges paid by the railroad company were necessary to be paid by any consignee before being allowed to get possession of its freight. The assignee of a chose in action of this char-

acter under our anti-commercial statute can never acquire the same free from any claims or set-offs against the assignor held or acquired previous to the notice of the assignment. And in this case, treating the direction of payment of the last fourteen cars as an assignment, the appellant railroad company had no notice of said assignment until long after it held and acquired the set-offs for the amount of freight previously paid by it on other shipments.

Section 4001, Code of 1906, which is determinative of this case, reads as follows:

"All promissory notes, and other writings for the payment of money or other thing, may be assigned by indorsement, whether the same be payable to order or assigns or not, and the assignee or indorsee may maintain such action thereon, in his own name, as the assignor or indorser could have maintained; and in all actions on such assigned promissory note, bill of exchange, or other writing for the payment of money or other thing, the defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts, and set-off made, had, or possessed against the same previous to notice of assignment in the same manner as though the suit had been brought by the payee; and the assignee or indorsee of any such instrument may maintain an action against the person or persons who may have indorsed the same, as in case of inland bills of exchange; but when any debt shall be lost by the negligence or default of an assignee or indorsee, the assignor shall not be liable on the assignment or indorsement. The assignee of a claim for the purchase money of land may enforce the vendor's lien as the vendor could."

It is impossible to separate the shipments of the last fourteen cars from the other shipments made by W. C. Sutherland to the appellant railroad company. All of the invoices for shipments from 1908 until the failure of the W. C. Sutherland Company were handled

in practically the same way, and it is therefore necessary to consider all of them for a proper determination of this case. At no time during these transactions did the bank ever hold any claim against appellant freed of the set-offs or claims of appellant against Sutherland. The bank simply at all times stood in the shoes of Sutherland.

The lower court erred in not allowing all of the amounts of the freight claims to be set off against the amount due the appellee for purchase price on said fourteen cars.

Reversed and remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*